FILED

2008 Mar-17  AM 09:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| **LARRY G. WALDRUP;** } | |
| **EARLENE WALDRUP,** } | |
| } | |
| **Plaintiffs,** } | |
| } | **CASE NO. CV 07-B-1283-NE** |
| **vs.** } | |
| } | |
| **HARTFORD LIFE INSURANCE** } | |
| **COMPANY; WILLIAM JOSEPH** } | |
| **ROBERTS,** } | |
| } | |
| **Defendants.** } | |

**MEMORANDUM OPINION**

This case is currently before the court on plaintiffs' Motion to Remand, (doc. 6),[1]

and defendant William J. Roberts's Motion to Dismiss (doc. 18).  Upon consideration of

the record, the submissions of the parties, the arguments of counsel, and the relevant law,

the court is of the opinion that plaintiffs' Motion to Remand is due to be denied, and

defendant Roberts's Motion to Dismiss is due to be granted.

**I.      FACTUAL SUMMARY**[2]

This action arises from Larry G. Waldrup's and Earlene Waldrup's ("plaintiffs")

purchase of a life insurance policy issued by Hartford Life Insurance Company

---

[1]  Reference to a document number, ["Doc. ___"], refers to the number assigned to each
document as it is filed in the court's record.

[2]  As required when considering a Motion to Remand, the court has considered the factual
allegations in the light most favorable to the plaintiffs.  *Crowe v. Coleman*, 113 F.3d 1536,
1538 (11th Cir. 1997).

("Hartford").  On October 10, 1995, defendant William J. Roberts ("Roberts"), a licensed agent for Hartford, approached plaintiffs to discuss their estate plan and life insurance. (Doc. 1, Ex. A, Pl.'s Complaint at 2, ¶¶ 6.)  Roberts represented to plaintiffs that a Hartford life insurance policy was a "better deal" than their existing policy, and that the "Hartford policy's cash value would eventually reach an amount where no further out of pocket premiums would be required of plaintiffs in order to keep the policy in force for the life of the policy."  (*Id*., ¶ 7.)  In reliance upon these representations made by Roberts, plaintiffs dropped their existing life insurance policy and purchased the Hartford policy (the "Policy").  (*Id*., ¶ 8.)  Plaintiffs made annual premium payments until 1999, when Roberts told them that "they could stop making out of pockets premium payments on the policy."  (*Id*., ¶ 7.)  In accordance with this representation made by Roberts in January 1999, plaintiffs did not make their annual premium payment for the year of 1999.  (*Id*., ¶ 8.)

In October 1999, Hartford sent a letter to plaintiffs concerning their decision to skip the premium payment for that year.  (Doc. 1, Notice of Removal, Ex. E, October 20, 2999 Letter.)  In the letter, Hartford confirmed that plaintiffs did have the option of skipping that year's premium, but stated that the option to skip payments in future years was not guaranteed.  (*Id*.)  Plaintiffs opted to skip premium payments until September 2006, when they received notice from Hartford that they would be required to resume making premium payments in order to keep their Policy in force.  (*Id*., ¶ 9; Doc. 7, Brief

in Support of Motion to Remand, Ex. A, Affidavit of Larry G. Waldrup at 2, ¶5, Ex. B, Affidavit of Earlene Waldrup at 2, ¶ 5.)

Plaintiffs commenced this lawsuit on June 4, 2007, by filing a Complaint in the Circuit Court of Madison County, Alabama. (*See* Doc. 1, Ex. 1, Complaint in *Larry G. Waldrup and Earlene Waldrup v. Hartford Life Insurance Company, et al.*, Civil Action No. CV -07-900300.) The Complaint contains the following seven counts: in Counts I-V plaintiff brings fraudulent misrepresentation and fraudulent suppression claims against Hartford and Roberts; in Counts VI-VII plaintiff brings claims against Hartford for negligent and wanton hiring, training, and supervision. (*Id*.)

Hartford timely removed this action from the Circuit Court of Madison County, Alabama, to the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1441(b). (*See*, Doc. 1, Notice of Removal.)[3] Hartford contends that this court has jurisdiction over this matter through diversity of citizenship and the requisite amount in controversy, pursuant to 28 U.S.C. § 1332(a). Hartford contends that complete diversity exists because the only non-diverse defendant, Roberts, was fraudulently joined to defeat federal jurisdiction. Plaintiffs have filed a Motion to Remand the action to state court, arguing that their Complaint states valid clams against Roberts. (*See* Doc. 6, Motion to Remand; Doc. 7, Br. in Support of Motion to Remand.)

_____

[3] Defendant Roberts has consented to the removal of this action. (*See*, Doc. 1, Notice of Removal, Ex. F, Consent to Notice of Removal.)

II.    **DISCUSSION**

Federal courts are courts of limited jurisdiction.  Therefore, this court may hear only cases that the Constitution or Congress has authorized.  A federal court has jurisdiction over cases involving parties from different states when the amount in controversy exceeds $75,000, excluding interest and costs.  28 U.S.C. § 1332(a).  In the instant case, complete diversity does not exist because plaintiffs and defendant Roberts are both citizens of the State of Alabama.  Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.  *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  However, there is an exception to the complete diversity requirement.  When a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether it may properly exercise federal jurisdiction based on diversity of citizenship.  *Henderson v. Washington National Insurance Company*, 454 F.3d 1278, 1281 (11th Cir. 2006).  Hartford contends that defendant Roberts was fraudulently joined in this case and, therefore, that there is complete diversity between the parties to this action.

It is well-established that a defendant's right to removal cannot be defeated by the fraudulent joinder of a resident defendant having no real connection to the controversy.  *See Triggs*, 154 F.3d 1284. The Eleventh Circuit has articulated three situations in which a defendant may be deemed to have been fraudulently joined: (1) when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant;

4

(2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where there is no joint, several, or alternative liability between a diverse defendant and the non-diverse defendant, and the plaintiff's claims against the non-diverse defendant otherwise bear no real connection to the claims asserted against the diverse defendant. *Triggs*, 154 F.3d at 1287.  "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate."  *Id*. (emphasis in original).

The defendant bears the burden of establishing federal jurisdiction, and thus of proving fraudulent joinder.  *Crowe v. Coleman*, 113 F.3d at 1538.  The defendant's burden on removal has been described as a "heavy one."  *Id*.  In considering a motion to remand a removed action back to state court, the district court must consider the factual allegations in the light most favorable to the plaintiff, and resolve any uncertainties about state substantive law in favor of remand.  *Id*. If there is a possibility that plaintiff's complaint states a cause of action against the non-diverse defendant, joinder is proper, and the district court must remand the case to state court.  *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983).  Stated differently, only if the court is convinced that there is "no possibility that the plaintiff can establish *any* cause of action against the resident defendant," should a motion to remand should be denied.  *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).

The court must make a determination as to its jurisdiction based upon the pleadings at the time of removal, as supplemented by any affidavits or deposition transcripts submitted by the parties. *Coker*, 709 F.2d at 1440. However, "[w]hen considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538.

In the instant case, Hartford asserts that there is no possibility that plaintiffs can establish a cause of action against defendant Roberts under Alabama law, and thus that this case involves the first type of fraudulent joinder. Specifically, Hartford contends that plaintiff's claims against Roberts for fraudulent misrepresentation and fraudulent suppression are time-barred. "If the only claims against a resident defendant are barred by the statute of limitations, then there is no possibility the plaintiff can establish a cause of action against the resident defendant. In such a situation, the resident defendant is deemed to be fraudulently joined." *Bullock v. United Benefit Insurance Co.*, 165 F. Supp. 2d 1255, 1258 (M.D. Ala. 2001)(internal quotations and citations omitted). Under Alabama law, the statute of limitations applicable to plaintiffs' fraud claims is two years. Ala. Code 1975 § 6-2-38(1).

Plaintiffs do not dispute the "prima facie untimeliness" of their claims against Roberts. *See Henderson*, 454 F.3d at 1282. The alleged representations made by Roberts occurred in 1995 and 1999, but plaintiffs did not file this action until 2007. (*See*, Doc. 1,

6

Notice of Removal, Ex. 1, Complaint.)  Plaintiffs contend, however, that they are entitled to tolling of the statute of limitations under the savings clause of Ala. Code § 6-2-3. Under Alabama's savings clause, the two-year statute of limitations does not begin to run in a fraud case until "the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6-2-3.  Plaintiffs claim that they did not discover the fraud until September 2006, when they received notice from Hartford that they must make additional premium payments to prevent their Policy from lapsing.  (Doc. 7, Br. in Support of Motion to Remand at 9.)

In support of removal, Hartford argues first, that plaintiffs have not sufficiently alleged fraudulent concealment for the purposes of invoking equitable tolling of the two-year statute of limitations under the savings provision found in Ala. Code 1975 § 6-2-3. Secondly, Hartford contends that, notwithstanding plaintiffs' failure to plead fraudulent concealment, their claims against Roberts are nonetheless time-barred because they should have discovered the alleged fraud, at the latest, in October 1999, and thus that the statute of limitations expired in October 2001.

"It is well settled that, upon allegations of fraudulent joinder, federal courts may look beyond the pleadings to determine if the joinder is a fraudulent device to prevent removal." *Raybon v. American Fidelity Assurance Co.*, 2005 WL 2002064, *4 (M.D. Ala. 2005) (citing *Cabalceta*, 883 F.2d at 1561; *Williams v. Atlantic Coast Line R.R. Co.*, 294 F.Supp 815, 816 (S.D. Ga. 1968)).  "[T]he determination of whether a resident

defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits or deposition transcripts submitted by the parties." *Id.* (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The proceedings appropriate "for resolving a claim for fraudulent joinder is similar to that used for ruling on a motion for summary judgment under" Rule 56(b) of the Federal Rules of Civil Procedure. *See Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (quoting *Crowe*, 113 F.3d at 1538 (11th Cir. 1997).[4] "In such a proceeding, the district court must 'resolve all questions of fact . . . in favor of the plaintiff.' " *Legg*, 428 F.3d at 1323 (citation omitted).

### A.    *Pleading of Fraudulent Concealment*

"When, as in this case, the plaintiff's complaint on its face is barred by the statute of limitations, the complaint must also show that he or she falls within the savings clause of § 6-2-3." *Miller v. Mobile County Board of Health*, 409 So.2d 420, 422 (Ala. 1981). "Although under modern rules of civil practice the pleadings only need put the defending party on notice of the claims against him, Rule 9(b) qualifies the generalized pleadings permitted by Rule 8(a), [Ala. R. Civ. P.]." *Smith v. Nat'l Sec. Ins. Co.,* 860 So.2d 343 (Ala. 2003). Pursuant to Rule 9(b) of the Alabama Rules of Civil Procedure, and Rule 9(b) of the Federal Rules of Civil Procedure, fraud must be averred with particularity.

---

[4] However, the court notes that, when considering a motion for remand a district court must not "weigh the merits of a plaintiffs claim beyond determining whether it is an arguable one under state law. *Crowe*, 113, F.3d at 1538.

Ala. R. Civ. P. 9(b); Fed. R. Civ. P. 9(b).  Specifically, the pleading must show "time, place, and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained."  *Smith*, 860 So.2d 343.  In the context of Ala. Code § 6-2-3, Rule 9(b) requires that a plaintiff must allege more than generalized or conclusory statements; rather, the plaintiff must aver the circumstances and events constituting the fraudulent concealment.  *Henderson*, 454 F.3d at 1284.  The Alabama Supreme Court has consistently held that a complaint is insufficient to invoke § 6-2-3 if it "fails to allege any of the facts or circumstances by which the [defendant] concealed the cause of action or injury" and "fails to allege what prevented [plaintiff] from discovering facts surrounding the [fraud]."  *Smith*, 860 So.2d at 347 (quoting *Miller*, 409 So.2d at 422).

Pointing to allegations in paragraphs 33, 35, and 37 of their Complaint, plaintiffs contend that they have "affirmatively pled fraudulent concealment."  (Doc. 11, Pl.'s Reply Br. at 2.)  The allegations upon which plaintiffs rely state:

> 33.     . . . Such aspects of the contract of insurance that were concealed from the agent and Plaintiffs are the true costs of the insurance product; the acquisition costs involved with the insurance product; mortality changes assessed in the contract; the company's discretion to change mortality expenses; the company's discretion to change general expenses; the company's contribution to the policy itself; the numerous company decisions that can be made in any given year, affecting the performance of the policy; as well as other aspects of the contract of insurance.

35.   As a proximate result of Defendant Hartford's fraudulent suppression and concealment to Defendant William Roberts and Plaintiffs, Plaintiffs were injured and damaged as alleged in paragraph 23 above.

37.   At the aforesaid time and place, Defendants innocently, recklessly, negligently, and/or wantonly made the aforementioned misrepresentations and/or concealed the material facts relating to the terms of the policy.

(Doc. 1, Notice of Removal, Ex. A, Complaint at 6, ¶¶ 33, 35, 37.)

The above-stated allegations allege neither "the facts or circumstances by which the [defendants] concealed the cause of action or injury," nor "what prevented [plaintiffs] from discovering facts surrounding the fraud." *See Smith*, 860 So.2d at 346-47; *Miller*, 409 So.2d at 422.   Rather, plaintiffs make only generalized allegations to support their claim of concealment.   Such generalized references to concealment, without any supporting factual detail, are insufficient to invoke the savings clause of § 6-2-3.   *See Smith*, 860 So.2d at 346 ("Unlike Smith's complaint – where there is no reference to concealment – the complaint under consideration in *Miller* at least contained reference to concealment.   Nevertheless, this court found the complaint in *Miller* to be insufficient.").

Plaintiffs contend that the allegations in their complaint are "almost identical" to the language contained in the plaintiff's complaint in *Henderson*, in which the Eleventh Circuit Court of Appeals held that the plaintiff's allegations were sufficient to present a "colorable claim for tolling under Ala. Code § 6-2-3."   454 F.3d at 1284.   Therefore, plaintiffs argue, they have "sufficiently pled fraudulent concealment such as to invoke the tolling provision" found in § 6-2-3.   (Doc. 11, Pl.'s Reply in Support of Motion to Remand.)

10

The court agrees with Hartford, however, that the Complaint at issue in the instant case is "in stark contrast to the complaint considered in *Henderson*," in that "it does not assert any facts whatsoever suggesting that the alleged fraud was concealed from Plaintiffs." (Doc. 10, Hartford's Response to Motion to Remand at 2.)  The *Henderson* court concluded that it was "unable to say that there is 'no possibility' that the Alabama state court would find that [plaintiff] has sufficiently plead a case for tolling," explaining its determination as follows:

> . . . [Certain] paragraphs of the complaint contain a more particularized and detailed description of events.  For instance, [plaintiff] avers that the "Defendants fraudulently suppressed and concealed the actual basis for their premium increases, which was, among other things, to impose such a financial burden and strain upon Plaintiff as to force her to cancel said policies."  Moreover, she claims that the defendants "serviced the 'group' policy purchased by Plaintiff so as to actively conceal or suppress the true nature of the policy and how premium increases were calculated."  Here, [plaintiff] has perhaps alleged **active suppression of the fraud in the servicing of the policy**.  Clearly, this averment is not highly detailed, but it provides more specificity than the "generalized and conclusionary" allegations that provide no fair notice at all.

> Finally, Henderson maintains that "[i]n addition to making affirmative representations to Plaintiff, the Defendants wrongfully concealed and suppressed from Plaintiff the true nature and pattern and practice in which Defendants were engaged . . . the Defendants specifically concealed and suppressed from Plaintiff the wrongful acts and/or material facts described [in the complaint]."  Here, it appears that Henderson has alleged **affirmative representations, after the fact of the fraud, that operated to conceal the truth from her**.

*Id*. at 1284.

11

Here, plaintiffs' Complaint is completely devoid of any allegation that defendant "actively suppressed the fraud in the servicing of the policy," or "that defendant[s] made any affirmative representations, after the fact of the fraud, which operated to conceal the alleged fraud" from plaintiffs. *See Id*. Therefore, *Henderson* is inapposite.

As discussed above, under Alabama law, generalized allegations merely referencing concealment, without supporting allegations concerning "the facts or circumstances by which the [defendants] concealed the cause of action or injury," or "what prevented [plaintiffs] from discovering facts surrounding the fraud," are insufficient to invoke the savings clause found in Ala. Code § 6-2-3. *See Smith*, 860 So.2d at 347. Therefore, the court is convinced that there is no possibility that plaintiffs could escape the bar of the statute of limitations based on the allegations in their complaint, and thus that there is no possibility that plaintiffs could establish a claim against Roberts under Alabama law. Accordingly, the court finds that Roberts was fraudulently joined in this action, and the Motion to Remand is due to be denied based on Hartford's first ground for removal.

## B.    *Reasonable Reliance*

As a separate and independent ground for removal, Hartford contends that, plaintiffs' failure to adequately plead fraudulent concealment notwithstanding, their claims against Roberts are nonetheless time-barred. In order to take advantage of equitable tolling of the statute of limitations with respect to a fraud claim, he or she must have reasonably relied upon the subsequent misrepresentations that supposedly prevented

him or her from discovering the fraud within the applicable limitations period. *See Denbo v. DeBray* 968 So.2d 983, 991 (Ala. 2006). Hartford argues that plaintiffs' receipt of their insurance Policy and accompanying illustration in 1995 and the October 1999 letter from Hartford to the plaintiffs, both of which indicated that their option to skip future premium payments was not guaranteed, put them on notice of any misrepresentations on Roberts's part and, thus, commenced the running of the statutory limitations period. (Doc. 10, Def.'s Br. in Response to Motion to Remand at 5-6.)

Plaintiffs merely state that they "did not discover, nor did they have the ability to discover, that they had been defrauded prior to 2006 when they received notice that they were required to make "out of pocket" premium payments in order to keep their Policy in force. (Doc. 7, Br. in Support of Motion to Remand at 9.) The crux of plaintiffs' argument is that the issue of when a fraud should have been discovered, under the reasonable reliance standard set forth in *Foremost Insurance Co. v. Parham*, 693 So.2d 409 (Ala. 1997), and its progeny, must be reserved for the jury.

Plaintiffs take the position that "all surrounding circumstances" must be taken into consideration and, thus, that the court is "not at liberty to make a finding as a matter of law that [they] could not have reasonably relied upon Defendants' misrepresentations." (Doc. 7, Br. in Support of Motion to Remand at 12.) However, Alabama law is clear on the fact that "if a party blindly trusts, where he should not, and closes his eye where ordinary diligence requires him to see, he is willingly deceived . . . " *Munroe v. Prichett*,

15 Ala. 785, 789 (1849); quoted, applied and followed in, among others, *Liberty National Life Insurance Co. v. Ingram*, 887 So.2d 222, 229 (Ala. 2004) (reversing judgment on jury verdict and holding trial court erred in not granting insurance company's motion for judgment as a matter of law because insured could not have reasonably relied on alleged statements of agent where written documents contradicted alleged statement); *Alfa Life Insurance Corp. v. Green*, 881 So.2d 987, 993 (Ala. 2003) (same); *Allstate Insurance Co. v. Eskridge*, 823 So.2d 1254, 1265 (Ala. 2001) (same); *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757, 759 (Ala. 1983) (affirming summary judgment entered on behalf of insurer because insured did not reasonably rely on statements of agent).

The two-year statute of limitations in a fraud case begins to run when the plaintiff discovered the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care.  Ala. Code § 6-2-3; *see also Gray v. Liberty National Life Insurance Co.*, 623 So.2d 1156, 1159 (Ala. 1983).  The question of when a plaintiff discovered or should have discovered an alleged fraud, for statute of limitations purposes, is generally one for the jury.  *Ex Parte American General Finance, Inc.*, 795 So.2d 685, 689 (Ala. 2000) (citing *Liberty National Life Insurance Co. v. Parker*, 703 So.2d 307, 308 (Ala. 1997)).  However, the Alabama Supreme Court has recognized that, under certain circumstances, this question may be decided as a matter of law.  *Id*. (citing *Kelly v. Connecticut Mutual Life Insurance Co.*, 628 So.2d 454, 458 (Ala. 1993).  " '[A] party will be deemed to have "discovered" a fraud as a matter of law upon the first of either the

14

actual discovery of the fraud or when the party becomes privy to facts that would provoke

inquiry in a reasonable person that, if followed up, would lead to the discovery of the

fraud.' " *Jones v. Kassouf & Company, P.C.*, 949 So.2d 136, 140 (Ala. 2006) (quoting

*Dickinson v. Land Developers Construction Co.*, 882 So.2d 291, 298 (Ala. 2003).  The

court has explained the *Foremost* "objective standard" as follows:

> The question of when a plaintiff should have discovered fraud should
> be taken away from the jury and decided as a matter of law only in
> cases where the plaintiff *actually knew* of facts that would have put a
> reasonable person on notice of fraud.  This court has explained that it
> is the knowledge of such *facts* that would have alerted a reasonable
> person to the existence of a potential fraud, and *not actual knowledge
> of the fraud itself,* that determines whether the question of the tolling
> of the limitations period in a fraud case [under § 6-2-3] can be decided as
> a matter of law.  As a corollary to this rule, we have held that fraud is
> discoverable as a matter of law for purposes of the statute of limitations
> when one receives documents that would put one on notice that the
> fraud reasonably should be discovered.

*Ex Parte American General Finance, Inc.*, 795 So.2d at 689-690 (internal quotations and

citations omitted; last emphasis added).

"The *Foremost* decision reestablished that the objective standard for determining

the accrual date for a fraud claim imposes a duty to read documents received in

connection with a particular transaction."  *Owens v. Life Insurance Co. of Georgia*, 289

F.Supp.2d 1319, 1326 (M.D. Ala. 2003).  Therefore, a fraud claim accrues upon a

plaintiff's "receipt of a document or contract alerting the plaintiff to the possibility of

fraud if the plaintiff could have read and understood such document and chose to ignore

its written terms."  *Id*.; *See also Auto Owners Insurance Co. v. Abston*, 822 So.2d 1187,

1195 (Ala. 2001) (holding that the limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a person of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.)

Two limitations to the *Foremost* rule have been recognized by Alabama courts. Under Alabama law, an individual is not capable of discovering fraud or negligent misrepresentation by reading and understand the terms of a contract if he or she is illiterate. *Potter v. First Real Estate Company, Inc.*, 844 So.2d 540, 547 (Ala. 2002). In addition, discovery of the fraud should not be deemed, as a matter of law, to have occurred upon the plaintiff's receipt of documents, if such document is ambiguous, i.e., capable of more than one interpretation, and thus hard to understand. *See Id*. (discussing *Ex parte Seabol*, 782 So.2d 212, 216-17 (Ala. 2000) (distinguishing *Foremost*; finding that where underlying documents are not easily understood, plaintiff's reliance on oral representations concerning documents is reasonable)).

Here, plaintiffs had in their possession documents which contradicted the alleged oral representations made by Roberts and which provided the information allegedly suppressed. However, plaintiffs refer generally to "surrounding circumstances" which may have entitled them to rely upon alleged representations that were directly contradicted by the Policy documents and the letter they received in October 1999. Despite every opportunity to do so, plaintiffs have not articulated those "surrounding circumstances" in their briefs or in any of the four affidavits they filed in support of their

Motion to Remand.  Plaintiffs have not alleged, nor have they offered evidence

indicating, that the Policy documents or the October 1999 letter were ambiguous, or that

they were otherwise unable to understand the Policy, the Illustration, or the letter.

         1.     The Policy and Accompanying Documents

Plaintiffs do not dispute that they received a copy of their Policy, along with a

Policy Illustration, in October 1995.  (Doc. 1, Notice of Removal, Ex. B, Policy

Illustration signed by Larry Waldrup; Ex. C, Policy Delivery Receipt dated signed by

Larry D. Waldrup.)  The Policy Illustration projects annual premium payments continuing

for each and every year through the 40th calendar year following the purchase of the

Policy; it does not show a potential for premium payments to cease or "vanish" at any

point during the life of the Policy.  (*Id*., Ex. B.)[5]  On the first three pages of the Policy

Illustration the following statement appears: "All projections are based on hypothetical

Sub-Account Yields which cannot be guaranteed."  (*Id*. at 1-3.)  The Illustration also

provides as follows:

> Assumed hypothetical gross investment rates of return are illustrative only and
> should not be deemed a representation of past or future investment results.
> The Death Benefit, Account Value, and Cash Value for a policy will be
> different from those shown if the actual investment rates of return average the
> rate shown in the illustration over a period of years, but fluctuated above or
> below such rate for individual policy years.  **No representation can be made**

---

[5] For this reason, contrary to plaintiffs' contention, this case does not fall within the
purview of the line of Alabama cases concerning when a cause action for fraud, based on
the purchase of a "vanishing premium" insurance policy, is deemed to have accrued.  *See
Williamson v. Indianapolis Life Insurance Co.*, 741 So.2d 1057 (Ala. 1999); *Stringfellow
v. State Farm Life Insurance Co.*, 743 So.2d 439 (Ala. 1999).

> **by ITT Hartford or your Registered Representative, that these hypothetical rates can be achieved for any one year or sustained over a period of time.**

(*Id*. at 6) (emphasis added).  Moreover, the "Illustration Summary" states, in part, as follows:

> **This summary describes some of the important features of the illustrated insurance policy.  Before signing the acknowledgment, please review this information carefully.  If you have any questions, ask your Financial Consultant.**
>
> •   •   •
>
> **Premium Payments**   Generally scheduled premiums are required to be paid during the Guarantee Period.   After the Guarantee Period:
>
> •   **Additional Premiums may be required if investment results, cost of insurance rates, or other policy changes are less favorable than originally anticipated.**
>
> •   Premiums may be less than those illustrated if investment results, cost of insurance rates, or other policy changes are more favorable than originally anticipated.
>
> **Acknowledgment**   I have received a copy of the illustration and prospectus.  I understand that:
>
> •   Any policy values that <u>are not guaranteed</u> are subject to change and could be either higher or lower.  <u>The Agent has not told me that they are guaranteed</u>.
>
> •   In the future, <u>I may need to modify my planned premium</u> to obtain non-guaranteed values shown on this illustration.

(*Id*. at 7-8) (emphasis added).  Plaintiff Larry Waldrup signed the Illustration on October

5, 1999, immediately below the acknowledgment, confirming that he understood that investment performance and Policy cash values were not guaranteed, and that required premium payments were subject to change.  (*Id*. at 8.)

Plaintiffs do not specifically argue that the Policy is ambiguous, rather, they attempt to draw a distinction between "out of pocket" premium payments, and premium payments "credited to the policy," and seem to suggest that the policy is ambiguous because it failed to draw such a distinction.  (*Id*.)  Plaintiffs contend that, while they knew that annual premiums would be due throughout the Policy's term, they relied on representations made by Roberts that, after a certain point, the premiums would be funded by the Policy's cash value.  Plaintiffs state as follows:

> It should be noted that Plaintiffs have only alleged that in 1995 Defendant Roberts represented that the Hartford policy's cash value would eventually reach an amount where no further "out of pocket" premiums would be required of Plaintiffs in order to keep the policy in force for the life of the policy, NOT that premiums would cease to be credited to the policy through the 30th calendar year.  Even if plaintiffs understood the language and figures from the alleged illustration, the fact that the illustration shows premiums continuing through the 40th calendar year of the policy would not necessarily have disclosed to Plaintiffs whether they would be required to pay "out of pocket" premiums.

(Doc. 7, Pl.'s Br. in Support of Motion to Remand at 8.)

There is no language in the Policy, nor any indication in the Illustration, suggesting any circumstance under which premiums would be funded by the Policy's cash value. Rather, the Policy describes a potential situation in which a premium payment may not be required in order to keep the Policy in force.

19

The Schedule of Premiums Section for the Policy provides, in relevant part, as follows:

**SCHEDULE OF PREMIUMS**

MODIFIED FLEXIBLE PREMIUM                          YEARS PAYABLE
VARIABLE LIFE INSURANCE POLICY

  ANNUAL SCHEDULED PREMIUM:  $15,043.77      1-42
  MODE FACTOR:                    1,000.00

                          $15,043.77

(*Id*., Ex. D at 3.)  Further, in the section dealing with Premiums, the Policy states:

> We use the Policy Surplus to determine whether or not the policy will terminate if Scheduled Premiums are not paid when due.
>
> . . .
>
> During the Guarantee Period, if You fail to pay a Scheduled Premium when due and if, on the premium due date and for the rest of that Policy Year, the Policy Surplus exceeds the Indebtedness, payment of that Scheduled Premium will not be required.  This policy will not terminate due to this nonpayment.

(Doc. 1, Notice of Removal, Ex. D at 9-10.)  The Policy clearly contemplates the ability to skip a premium payment if the Policy Surplus exceeds the Indebtedness for that Policy Year.  *See, Id.*  However, nowhere in the Policy is any indication that the "policy's cash value would eventually reach an amount where no further 'out of pocket' premiums would be required of Plaintiffs in order to keep the policy in force."  (*See* Doc. 7, Pl.'s Br. in Support of Motion to Remand at 8.)

The court is of the opinion that it is clear from the language quoted above, as well as the Illustration, that the performance of the Policy, and thus the potential option to skip premium payments, is subject to sub-account yields which <u>cannot be guaranteed</u>.  (*See generally, Id.*, Ex. B, Policy Illustration; Ex. D, Specimen Copy of the Hartford Policy.) Larry Waldrup signed the Policy Illustration acknowledging that he "understood" that "any policy values are <u>not guaranteed</u>; and that "[i]n the future [he] may need to modify [his] planned premium to obtain <u>non-guaranteed values</u> shown on this illustration." Further, the acknowledgment states:  <u>The Agent has not told me that they are guaranteed</u>. (Doc. 1, Notice of Removal, Ex. B at 8.)  Mr. Waldup's signature appears directly below these statements.  *Id*.  *See Potter*, 844 So.2d at 551 (the fact that plaintiff signed a certificate acknowledging that he had "received and approved a copy of the survey" did not necessarily imply that he then read the survey; however, had the plaintiff signed a statement that clearly acknowledged that he had *read* the survey, a different case would be presented).  Therefore, as of the date of the plaintiffs' receipt of the Policy and accompanying documents, or shortly thereafter, any reliance by plaintiffs on representations contrary to the clear and unambiguous language in the Policy[6] was not reasonable, and that plaintiffs' claims against defendant Roberts are time-barred.

  2. <u>The October 20, 1999 Letter</u>

Even assuming that Roberts misrepresented that plaintiffs could eventually cease

---

[6]  Plaintiffs do not allege that either of them is illiterate, or otherwise unable to read.

21

making out of pocket premium payments and that the Hartford Policy was a "better deal" than their existing policy, and assuming that plaintiffs could have reasonably relied upon such representations despite the language in the Policy and Illustration, and further assuming that Roberts made a subsequent representation that plaintiffs could cease making premium payments in January 1999, the court is of the opinion that plaintiffs could not have reasonably relied on <u>any statements</u> made after October 1999, when Hartford sent a letter to plaintiffs which specifically advised them that the ability to skip the premium payment for one year does not guarantee that this option will be available in future years.  (*See*, Doc. 1, Notice of Removal, Ex. E, October 20, 1999 Letter.)

Plaintiffs have each submitted an Affidavit in which they state that, in January 1999, they received a note from Roberts which stated: "I believe the cash value is now pretty close to our <u>total</u> payments for this insurance!"  (Doc. 11, Pl.'s Reply in Support of Motion to Remand, Ex 1, Affidavit of Larry D. Waldrup, Ex. A; Ex. 2, Affidavit of Earlene Waldrup, Ex. A.)  Plaintiffs contend that they reasonably relied upon this representation until they learned definitively in 2006 that they would be required to make additional premium payments.  However, as Exhibit E to its Notice of Removal, defendant has attached a copy of a letter dated October 20, 1999 from Hartford to plaintiffs.  (Doc. 1, Ex. E.)  The letter states, in pertinent part, as follows:

> We have not yet received the last premium due on your life insurance policy. However, your policy provides you the option of skipping this year's premium as you currently have a Policy Surplus.  A Policy Surplus has occurred because the Account Value of your policy currently exceeds the Target Account Value for year 5 as shown in your policy.

> **While you may choose to skip your premium payment, you should understand that the option to skip payment of your normal premium this year does not guarantee that this option will be available to you in future years.  The Policy Surplus Amount could be reduced or eliminated in future years as a result of a number of factors, including premium withdrawals and investment option performance. Continuing to pay your premium could help offset any impact to the Account Value of your policy.**

(Doc. 1, Ex. E) (emphasis added).[7]

Plaintiffs argue that defendant has provided no evidence to support its assertion that plaintiffs received this letter.  (Doc. 11, Pl.'s Reply in Support of Motion to Remand at 3.)  However, Hartford has submitted the Affidavit of Sheree A. Mattes, custodian of Hartford's records, stating that the October 20, 1999 letter from Hartford to plaintiffs was properly addressed and mailed on that date.  (Doc. 13-1, Hartford's Sur-Reply in Opposition to Motion to Remand, Ex. A at 2.)  "The common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee." *Konst v. Florida E. Coast Ry. Co.*, 71 F.3d 850, 857 (11th Cir. 1996), *quoted in Barnett v. Okeechobee Hospital*,  283 F.3d 1232, 1239 (11th Cir. 2002).  The presumption can be rebutted –

> After all, the presumption of receipt is not a conclusive presumption of law, but a mere inference of fact . . . and, when it is opposed by evidence that the letters never were received, must be weighed with all the other circumstances of the case . . . in determining the question whether the letters were actually received or not.

---

[7] Plaintiffs filed a Motion to Strike this letter from the record.  (Doc. 12.)  However, by separate Opinion and Order, the court denied the Motion to Strike.

*Barnett*, 283 F.3d 1232, 1240 (11th Cir. 2002)(quoting *Rosenthal v. Walker*, 111 U.S. 185, 193-94 (1884))(internal quotations omitted).  While plaintiffs argue that there is a question of fact, inappropriate for consideration on a motion to remand, as to whether they received the letter, they have offered no evidence or sworn testimony to rebut the presumption that the properly mailed letter was received.  Plaintiffs do not affirmatively argue that they did not receive the letter, nor do they so state in any of the four affidavits they submitted in support of their Motion to Remand.  Therefore, the court may properly presume that the letter was, in fact, received.  *See Barnett v. Okeechobee Hospital*,  283 F.3d at 1239.

Plaintiffs argue that, even assuming that they received the letter, it "does not prove anything with regard to whether plaintiffs reasonably relied on representations made by Defendant Roberts regarding the payment of 'out of pocket' premiums."  (Doc. 11, Pl.'s Reply in Support of Motion to Remand at 4.)  Specifically, plaintiffs state that the "language of the letter is speculative with regard to future premium payments and whether or not it even applies to Plaintiffs' specific situation, given representations made by Defendant Roberts that their cash value had reached an amount where no further 'out of pocket' premiums would be required."  (*Id*.)  Further, plaintiffs argue that there is also a question of "whether the letter, in and of itself, would have been sufficient enough to cause any question in Plaintiff's minds as to the reasonableness of their reliance on Defendant Roberts's representations."  (*Id*. at 4-5.)

24

As previously stated, pursuant to *Foremost* and its progeny, a party will be deemed to have discovered a fraud as a matter of law or when the party becomes privy to facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud. *Jones v. Kassouf & Company, P.C.*, 949 So.2d 136, 140 (Ala. 2006). This rule does not apply when the aggrieved party is illiterate, or "where the documents 'are vague or . . . do not reasonably indicate that a fraud has occurred, based on the circumstances of the case.' " *Ex parte American General Finance*, 795 So.2d at 690.

Plaintiffs are correct that, in consideration of a motion for remand, the court must resolve all questions of fact in favor of the plaintiffs. *Legg*, 428 F.3d at 1323. However, in *Legg*, the Eleventh Circuit emphasized that there must be a question of fact before the district court can resolve that fact in favor of the plaintiff. *Id*. Where plaintiff fails to offer sworn testimony or other evidence to dispute evidence submitted by the defendant, the court cannot then resolve facts in plaintiff's favor based solely on unsupported allegations in the complaint. *Id*.

Plaintiffs do not allege that either of them is illiterate, or otherwise unable to read the letter. Without evidence or argument to the contrary, it is entirely reasonable to presume that plaintiffs were capable of reading the October 1999 letter. *See Potter*, 844 So.2d at 547 (under Alabama law, an individual is not capable of discovering fraud or negligent misrepresentation by reading and understand the terms of a contract if he or she is illiterate). Furthermore, the language in the letter is straightforward and unambiguous.

25

Plaintiffs contend they reasonably relied upon Roberts's representation that the cash value of their Policy was such that they would not be required to make any future premium payments.  However, the letter states:  ". . . you should understand that the option to skip payment of your normal premium this year does not guarantee that this option will be available to you in future years."  (Doc. 1, Notice of Removal, Ex. E.)  There is only one reasonable interpretation of this language: that the option to skip future premium payments is <u>not guaranteed</u>.  *See, Potter.*, 844 So.2d at 547 (a document is ambiguous if it is capable of more than one interpretation, and thus hard to understand); *see also Ex parte Seabol*, 782 So.2d at 216-17.  Therefore, the court finds as a matter of law that plaintiffs should have discovered the alleged fraud upon their receipt of the October 20, 1999 letter from Hartford, and thus, after that date, could not have reasonably relied on any of the alleged representations made by Roberts.[8]  Accordingly, even if plaintiffs' Complaint sufficiently plead fraudulent concealment so as to invoke the savings clause found in Ala. Code § 6-2-3, their cause of action against Roberts accrued and, thus, the statute of limitations began to run no later than October 1999 and expired in October 2001, almost six years before plaintiffs filed their Complaint.

Because plaintiffs' claims against Roberts are time-barred as a matter of law, there is no possibility that they could establish a cause of action against him under Alabama law.  Therefore, the court finds that the non-diverse defendant, William Roberts, was

---

[8] Notably, plaintiffs do not allege any affirmative representation by Roberts or by Hartford after October 1999.

fraudulently joined in this action.  *See Bullock v. United Benefit Insurance Co.*, 165 F.

Supp. 2d 1255, 1258 (M.D. Ala. 2001) ("If the only claims against a resident defendant

are barred by the statute of limitations, then there is no possibility the plaintiff can

establish a cause of action against the resident defendant.  In such a situation, the resident

defendant is deemed to be fraudulently joined.")  Because complete diversity exists,

federal jurisdiction is proper.  Plaintiff's Motion to Remand is due to be denied.

      **C.**    ***Vanishing Premium Cases***

      Finally, Plaintiffs attempt to bring this case within the purview of the line of

Alabama cases concerning when a cause action for fraud, based on the purchase of a

"vanishing premium" insurance policy, is deemed to have accrued.  *See Williamson v.*

*Indianapolis Life Insurance Co.*, 741 So.2d 1057 (Ala. 1999); *Stringfellow v. State Farm*

*Life Insurance Co.*, 743 So.2d 439 (Ala. 1999).  A "vanishing premium" policy is

intended to sustain itself by generating enough income, through dividends and interest, to

cover the premiums.  *See Alfa Life Insurance Co. v. Jackson*, 906 So.2d 143, 150 (Ala.

2005).  In order for a claim arising from the purchase of a "vanishing premium" policy to

become ripe, the insured must "wait and see" whether the policy performs as promised in

the future.  In *Williamson* and *Stringfellow*, the Alabama Supreme Court held that such a

claim "[does] not become ripe for adjudication" until the insured is required to pay "out

of pocket" premiums after the purported "vanish date," the date upon which it was

represented that the policy would become self-sustaining.  *Id.*

This line of vanishing premium cases is readily distinguishable from the instant case.  Here, it is clear from the Policy documents and from the October 1999 letter that the Policy at issue does not have a "vanish date," and plaintiffs do not allege otherwise.  Plaintiffs allege that Roberts represented to them that "eventually," they would no longer be required to make premium payments in order to keep the Policy in force.  (Doc. 1, Notice of Removal, Ex. A, Complaint at 2-3, ¶¶ 7, 17.)  Plaintiffs do not allege that they were promised that the Policy would become self-sustaining by a particular date.  Rather, they allege that, in January 1999, Roberts represented to them that they would not be required to make any additional premium payments.  (*Id*.)  However, after skipping their very first premium payment, plaintiffs received a letter from Hartford advising that the option to skip future premium payments was not "guaranteed."  (*Id*., Ex. E, October 20, 1999 Letter.)  Therefore, unlike the plaintiffs in *Williamson* and *Stringfellow*, Mr. and Mrs. Waldrup did not have to "wait and see" whether the Policy would perform as promised.  They were on notice in October 1999 that they might be required to make additional out of pocket premium payments in the future.  Accordingly, as discussed above, the plaintiffs cause of action against Roberts accrued, at the latest, upon their receipt of the October 1999 letter.

## III.   ROBERTS'S MOTION TO DISMISS

Because the court finds that plaintiffs' claims against Roberts's are time-barred as set out in detail above, defendant Roberts's Motion to Dismiss (doc. 18) is due to be granted.

28

## IV.   CONCLUSION

Based on the forgoing, the court finds that plaintiffs' Motion to Remand (doc. 6) is due to be denied, and that defendant Roberts's Motion to Dismiss (doc. 18) is due to be granted.  An Order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 17th day of March, 2008.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE